# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| SID'S, INC., | ) | Case No. 16-91133 |
| | ) | |
| Debtor. | ) | Hon. Mary P. Gorman |

## EASTERN FUNDING, LLC'S MOTION FOR RELIEF FROM AUTOMATIC STAY

Creditor Eastern Funding, LLC d/b/a Specialty Vehicle and Equipment Funding Group ("Eastern Funding"), by and through its counsel, respectfully moves this Court for an order modifying the automatic stay pursuant to 11 U.S.C. §362 to allow Eastern Funding to repossess certain collateral from the Debtor, Sid's, Inc. (the "Debtor").  In support of its Motion, Eastern Funding states as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction in regard to this matter pursuant to 28 U.S.C. §§ 157 and 1334.  The statutory predicate for the relief requested in this Motion is 11 U.S.C. § 362.

2.      On November 17, 2016, the Debtor filed its voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Petition Date").

3.      The Debtor, as Debtor in Possession, has continued in possession of its property, pursuant to 11 U.S.C. §§1107 and 1108.

4.      Venue is proper in this court pursuant to 28 U.S.C. § 1409 as the relief requested by this Motion constitutes a proceeding arising under and related to Debtor's Chapter 7 bankruptcy proceeding which is currently pending before this Court.

## BACKGROUND

A.      **First Loan (Loan No. 71337-001)**

5.      On March 18, 2014, Eastern Funding, as lender, and the Debtor, as borrower, entered into Master Promissory Note and Security Agreement No. 71337 and Loan Schedule No. 001 thereto (the "First Loan") pursuant to which the Debtor acquired certain equipment: One (1) 2013 Dodge 5500, Vin No. 3C7WRMDL6DG595825 with One (1) 2013 Vulcan Steel Carrier, Serial No. 195C10S04864HF13 (the "First Vehicle"). See First Loan attached hereto as Exhibit 1.

6.      Pursuant to the First Loan, the Debtor agreed to make one (1) initial payment of $3,137.00, followed by seventy (70) consecutive monthly payments of $1,356.00. See Exhibit 1.

7.      Eastern Funding properly perfected its security interest in the First Vehicle. Eastern Funding is identified as the first lienholder on the Certificate of Title for the First Vehicle. A true and correct copy of the Certificate of Title reflecting Eastern Funding's first priority security interest in the First Vehicle is attached hereto as Exhibit 2.

8.      The Debtor defaulted under the First Loan by failing to make the payment due September 24, 2016, and all payments due thereafter.

9.      The First Loan provides that, upon the occurrence of an event of default, the lender may declare all past, present and future payments required by the First Loan immediately due and payable, and the lender may further take possession of the First Vehicle. See First Loan, Paragraph 8.

10.     As a result of the default under the First Loan, Eastern Funding is entitled to payment of the remaining balance due under the First Loan of $46,558.53, plus pre-petition

accrued interest of $1,116.73, late charges of $271.20, and NSF Fees of $120.00, and less unapplied payments of $44.00, for total damages of $48,022.46.

11.      As a result of the default under the First Loan, Eastern Funding repossessed the First Vehicle.  The First Vehicle had not been sold as of the Petition Date.  The Debtor shall be credited for the net proceeds received from the sale of the First Vehicle.

12.      Eastern Funding estimates the value of the First Vehicle at $30,000.00, depending on condition and mode of sale.

13.      The value of the First Vehicle is less than the amount due Eastern Funding.  As such, the Debtor has no equity interest in the First Vehicle.

### B.    Master Agreement No. 71529

14.      On July 1, 2014, Eastern Funding, as lender, and the Debtor, as borrower, entered into Master Promissory Note and Security Agreement No. 71529 ("Master Agreement No. 71529") wherein Eastern Funding agreed to finance the Debtor's acquisition of equipment as set forth on the related loan schedules.  See Master Agreement No. 71529 attached hereto as Exhibit 3.

### C.    Second Loan (Loan No. 71529-001)

15.      Also on July 1, 2014, Eastern Funding, as lender, and the Debtor, as borrower, entered into Loan Schedule No. 001 to Master Agreement No. 71529 wherein Eastern Funding agreed to finance the Debtor's acquisition of certain equipment: One (1) 2015 Ford F550, Vin No. 1FDUF5GT1FEA17538 with One (1) 2014 Vulcan Steel Carrier, Serial No. 195C10S07000GD14 (the "Second Vehicle").  See Loan Schedule No. 001 to Master Agreement No. 71529 attached hereto as Exhibit 4.  Master Agreement No. 71529 and Loan Schedule No. 001 are collectively referred to as the "Second Loan."

16.     Pursuant to the Second Loan, the Debtor agreed to make one (1) initial payment of $425.00, followed by seventy-two (72) consecutive monthly payments of $1,385.00.  See Exhibit 4.

17.     Eastern Funding properly perfected its security interest in the Second Vehicle. Eastern Funding is identified as the first lienholder on the Certificate of Title for the Second Vehicle.  A true and correct copy of the Certificate of Title reflecting Eastern Funding's first priority security interest in the Second Vehicle is attached hereto as Exhibit 5.

18.     The Debtor defaulted under the Second Loan by failing to make the payment due September 15, 2016, and all payments due thereafter.

19.     The Second Loan provides that, upon the occurrence of an event of default, the lender may declare all past, present and future payments required by the Second Loan immediately due and payable, and the lender may further take possession of the Second Vehicle. See Second Loan, Paragraph 8.

20.     As a result of the default under the Second Loan, Eastern Funding is entitled to payment of the remaining balance due under the Second Loan of $51,985.02, plus pre-petition accrued interest of $1,552.20, late charges of $346.25, and NSF Fees of $180.00, and less unapplied payments of $15.00, for total damages of $54,048.47.

21.     Eastern Funding estimates the value of the Second Vehicle at $50,000.00, depending on condition and mode of sale.

22.     The value of the Second Vehicle is less than the amount due Eastern Funding.  As such, the Debtor has no equity interest in the Second Vehicle.

23.     The Debtor remains in possession and control of the Second Vehicle.

24.    Eastern Funding does not know if the Second Vehicle is insured or otherwise secured.

**D.    <u>Third Loan (Loan No. 71529-002)</u>**

25.    On March 25, 2015, Eastern Funding, as lender, and the Debtor, as borrower, entered into Loan Schedule No. 002 to Master Agreement No. 71529 wherein Eastern Funding agreed to finance the Debtor's acquisition of certain equipment: One (1) 2015 Freightliner M-2, Vin No. 1FVACWDT3FHGJ4450 with One (1) 2014 Century Steel Carrier, Serial No. 215L12S08236GK14 (the "Third Vehicle").  <u>See</u> Loan Schedule No. 002 to Master Agreement No. 71529 attached hereto as Exhibit 6. Master Agreement No. 71529 and Loan Schedule No. 002 are collectively referred to as the "Third Loan."

26.    Pursuant to the Third Loan, the Debtor agreed to make one (1) initial payment of $14,190.00, followed by seventy-two (72) consecutive monthly payments of $1,541.00.  <u>See</u> Exhibit 6.

27.    Eastern Funding properly perfected its security interest in the Third Vehicle. Eastern Funding is identified as the first lienholder on the Certificate of Title for the Third Vehicle.  A true and correct copy of the Certificate of Title reflecting Eastern Funding's first priority security interest in the Third Vehicle is attached hereto as Exhibit 7.

28.    The Debtor defaulted under the Third Loan by failing to make the payment due August 3, 2016, and all payments due thereafter.

29.    The Third Loan provides that, upon the occurrence of an event of default, the lender may declare all past, present and future payments required by the Third Loan immediately due and payable, and the lender may further take possession of the Third Vehicle.  <u>See</u> Third Loan, Paragraph 8.

30.    As a result of the default under the Third Loan, Eastern Funding is entitled to payment of the remaining balance due under the Third Loan of $68,120.54, plus pre-petition accrued interest of $2,795.19, late charges of $385.25, and NSF Fees of $140.00, for total damages of $71,440.98.

31.    Eastern Funding estimates the value of the Third Vehicle at $65,000.00, depending on condition and mode of sale.

32.    The value of the Third Vehicle is less than the amount due Eastern Funding.  As such, the Debtor has no equity interest in the Third Vehicle.

33.    The Debtor remains in possession and control of the Third Vehicle.

34.    Eastern Funding does not know if the Third Vehicle is insured or otherwise secured.

**E.    Fourth Loan (Loan No. 71529-003)**

35.    On October 13, 2015, Eastern Funding, as lender, and the Debtor, as borrower, entered into Loan Schedule No. 003 to Master Agreement No. 71529 wherein Eastern Funding agreed to finance the Debtor's acquisition of certain equipment: One (1) 2012 International Model 4300 Ext. Cab., Vin No. 1HTMKAZN6CH044206 with One (1) 2012 Vulcan V30 16 Ton Wrecker, Serial No. 30140425312 (the "Fourth Vehicle").  See Loan Schedule No. 003 to Master Agreement No. 71529 attached hereto as Exhibit 8.  Master Agreement No. 71529 and Loan Schedule No. 003 are collectively referred to as the "Fourth Loan."

36.    Pursuant to the Fourth Loan, the Debtor agreed to make one (1) initial payment of $21,700.00, followed by sixty (60) consecutive monthly payments of $2,666.00.  See Exhibit 8.

37.    Eastern Funding properly perfected its security interest in the Fourth Vehicle. Eastern Funding is identified as the first lienholder on the Certificate of Title for the Fourth

Vehicle. A true and correct copy of the Certificate of Title reflecting Eastern Funding's first priority security interest in the Fourth Vehicle is attached hereto as Exhibit 9.

38.    The Debtor defaulted under the Fourth Loan by failing to make the payment due August 20, 2016, and all payments due thereafter.

39.    The Fourth Loan provides that, upon the occurrence of an event of default, the lender may declare all past, present and future payments required by the Fourth Loan immediately due and payable, and the lender may further take possession of the Fourth Vehicle. See Fourth Loan, Paragraph 8.

40.    As a result of the default under the Fourth Loan, Eastern Funding is entitled to payment of the remaining balance due under the Fourth Loan of $108,485.73, plus pre-petition accrued interest of $3,815.70, late charges of $665.50, and NSF Fees of $140.00, for total damages of $113,106.93.

41.    As a result of the default under the Fourth Loan, Eastern Funding repossessed the Fourth Vehicle. The Fourth Vehicle had not been sold as of the Petition Date. The Debtor shall be credited for the net proceeds received from the sale of the Fourth Vehicle.

42.    Eastern Funding estimates the value of the Fourth Vehicle at $85,000.00, depending on condition and mode of sale.

43.    The value of the Fourth Vehicle is less than the amount due Eastern Funding. As such, the Debtor has no equity interest in the Fourth Vehicle.

44.    Upon information and belief, there are no other entities that may have a legal or equitable interest in the First Vehicle, Second Vehicle, Third Vehicle and Fourth Vehicle (collectively the "Vehicles").

## RELIEF SOUGHT

**A.**     ***Relief from Stay.***

45.     Section 362(d) of the Bankruptcy Code provides that:

(d)     On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay-

(1)     for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2)     with respect to a stay of an act against property under subsection (a) of this section, if-

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary for an effective reorganization.

11 U.S.C. §362(d); see also Thompson v. Gen. Motors Acceptance Corp., LLC, 566 F.3d 699, 704 (7th Cir. 2009) (modification of stay appropriate where debtor lacks equity in collateral).

46.     The amount of Eastern Funding's total claim is $286,618.84, which exceeds the estimated value of the Vehicles of $230,000.00.

47.     Cause exists to modify the automatic stay, because the Debtor has no equity in the Vehicles.

48.     Eastern Funding will suffer irreparable damage if the relief requested is not granted immediately as the interest of Eastern Funding is not adequately protected.

49.     The Vehicles are not necessary for an effective reorganization, as Chapter 7 proceedings are for the purpose of liquidating assets and no reorganization is being pursued. Additionally, Eastern Funding secured possession of the First Vehicle and Fourth Vehicle prior to the Petition Date.  The Debtor remains in possession and control of the Second Vehicle and Third Vehicle.

55.     To the extent that an automatic stay arose pursuant to Section 362 of the Bankruptcy Code, it must be terminated or modified to allow Eastern Funding to liquidate the Vehicles to afford Eastern Funding the opportunity to minimize its losses and claims against the Debtor.

WHEREFORE, Eastern Funding, LLC d/b/a Specialty Vehicle and Equipment Funding Group respectively requests:

a.     that the automatic stay, to the extent it arose pursuant to §362 of the Bankruptcy Code, be modified or terminated, to permit Eastern Funding to recover and dispose of the Vehicles;

b.     that the provisions of Bankruptcy Rule 4001(a)(3) not apply to the Order modifying this stay;

c.     that Eastern Funding have such other and further relief as this Court deems just and proper.

EASTERN FUNDING, LLC d/b/a Specialty Vehicle and Equipment Funding Group,

By:     /s/ C. Randall Woolley
        Thomas V. Askounis (IL#0077720)
        C. Randall Woolley (IL#6280067)
        Askounis & Darcy, PC
        444 North Michigan Avenue, Suite 3270
        Chicago, IL 60611
        (312) 784-2400 Telephone
        (312) 784-2410 Facsimile
        taskounis@askounisdarcy.com
        rwoolley@askounisdarcy.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 25th of May, 2017, I electronically filed Eastern Funding, LLC d/b/a Specialty Vehicle and Equipment Funding Group's *Motion for Relief from Automatic Stay* with the Clerk of the Court using the CM/ECF system, which will send notification to the following:

- **Dennis A Dressler**    ddressler@dresslerpeters.com, kpeters@dresslerpeters.com
- **Cristina M. Manuel**    legalease4me@yahoo.com, brithelawguy@gmail.com
- **K. Lindsay Rakers**    rakers@tapellalaw.com, dgabel@tapellalaw.com
- **Timothy E Ruppel**    tim.ruppel@usdoj.gov, timmy.ruppel@gmail.com
- **David Schott**    dschott@rssclaw.com, ksneed@rssclaw.com
- **U.S. Trustee**    USTPRegion10.PE.ECF@usdoj.gov
- **Emily Heitz Wilburn**    ewilburn@quinnjohnston.com, saustin@quinnjohnston.com
- **Kristin Wilson**    klwilson111@gmail.com,
  KLW@trustesolutions.net;cshort345@gmail.com;klw@trustesolutions.net


and hereby certify that on the 25th of May, 2017 caused correct copies of Eastern Funding, LLC d/b/a Specialty Vehicle and Equipment Funding Group's *Motion for Relief from Automatic Stay* to be mailed by United States Postal Service, postage prepaid, from 444 North Michigan Avenue, Chicago, Illinois 60611 to the following non-CM/ECF participant:

> **Sid's, Inc.**
> 114 N. North St.
> Danville, Il 61832


By:    /s/ C. Randall Woolley

| Place of Execution. Melville, NY | MASTER PROMISSORY NOTE and SECURITY AGREEMENT (this "Note" or the "Note") | Loan # 71337 Date: 03/18/2014 |
|---|---|---|

**FOR VALUE RECEIVED**, Sid's Inc. DBA Sids Towing and Recovery ("Maker"), with a principal place of business and notice address at 528 E Fairchild Street, Danville IL 61832, promises to pay to the order of Eastern Funding LLC d/b/a Specialty Vehicle and Equipment Funding Group, a subsidiary of Brookline Bank ("Lender"), at 538 Broadhollow Road, Suite 221, Melville, NY 11747 or at such other place as may be designated in writing by Lender, the Loan Amount(s), plus interest thereon computed on the basis of a 360 day year, payable in accordance with the terms and conditions detailed on one or more Loan Schedules referencing this Note. Each installment payment received by Lender pursuant to a Loan Schedule shall first be applied to the payment of interest on the respective principal sum, or so much thereof as shall from time to time remain unpaid and then applied at Lender's discretion. No Note funding shall occur before the Collateral (defined below and specifically detailed on each Loan Schedule) is delivered to and accepted by Maker

**(1)Payments.** If any payment or other amount due hereunder is not received by Lender within 10 days of its due date, **a late charge of 5%** of each payment so overdue may be charged by Lender to defray the expenses incident to processing such payment. Any such late charge shall not reduce or diminish Maker's obligation to pay per diem interest. Maker may prepay this Note in full (not in part) at any time by paying Lender an amount equal to: **(A)** all charges and fees then due and owing to Lender; **(B)** all payments of principal and interest due and owing to Lender to the date of prepayment; and, **(C)** a prepayment fee equal to 5% of the Note's then outstanding principal balance if the prepayment is made before the Note's first anniversary, declining by 1% annually until it reaches 2% (i.e., 5%, 4%, 3% 2% and 2% thereafter). Partial prepayments received by Lender will: (i) be non-interest bearing; and, (ii) if sufficient to pay the entire amount of the next scheduled monthly installment of principal and interest, be applied thereto on the due date thereof. "In the event that either a check tendered by or on behalf of Maker or an authorized, automatic payment on behalf of Maker is not duly honored by the institution on which it is drawn for ANY reason, notwithstanding anything else in this Agreement to the contrary, Lender shall be permitted to charge a fee of $50 per dishonor, but not in excess of any amount permitted by the law of the jurisdiction of Maker's principal place of business detailed above." If on two occasions within any 12 month period Maker's checks and/or Maker's authorized, automatic payments to Lender are not honored when presented in due course to the bank on which they are drawn, Lender shall be permitted to: (a) require payments hereunder to be made by certified check, postal money order, or teller's check; and/or, (b) increase the annual interest rate then being charged by 0.5%. In addition to the 0.5% detailed in the preceding sentence, if Maker withdraws Maker's authorization for Lender to automatically debit Maker's account pursuant to the Electronic Funds Transfer Act, Lender shall be permitted to increase the annual interest rate then being charged by 0.5%.

**(2) Grant of Security Interest.** In order to secure payment of this Note and any other direct or indirect, absolute or contingent indebtedness or liability of Maker to Lender, due or to become due, now existing or hereafter arising, including all future advances or loans which may be made at Lender's option (all hereinafter called the "obligations"), Maker hereby grants to Lender, and Lender hereby accepts, a first priority perfected security interest in and to: **(A)** each Cab/Chassis (including engine) and Additional Equipment described on one or more Loan Schedules referencing this Note, **(B)** all accessions, parts, replacements, substitutions, accessories, attachments and appurtenances in any way used with, attached to or installed in or on the Cab/Chassis (collectively referred to as a "Vehicle"); **(C)** any insurance proceeds received in connection with the Vehicle, and, **(D)** the $0.00 cash collateral (the "Cash Collateral") given to Lender before the Note is funded (all of the foregoing shall be collectively referred referred to as the "Collateral"). Maker will execute and deliver to Secured Party such state motor vehicle lien applications ("Motor Vehicle Documents") and Uniform Commercial Code financing statements, and all amendments thereto and extensions thereof ("UCC Documents") necessary in Maker's sole discretion to perfect or maintain the security interest herein granted. The title to each Motor Vehicle shall reflect the Lender or its nominee as the sole lien holder thereon (including pursuant to any applicable electronic titling statutes) and, without the prior written consent of Lender, Maker shall not remove or cause the removal of such lien holder notation. Maker shall cause each title issued with respect to a Motor Vehicle to be delivered directly to Lender from the applicable motor vehicle authority or, if not possible or if Maker receives any such title, Maker shall forthwith deliver such title to Lender or its designee. To the extent permitted by applicable law, Lender is authorized to sign and file such Motor Vehicle Documents, titles and UCC Documents as Maker's attorney-in-fact. The Cash Collateral does not entitle Maker or any person or entity that has guaranteed Maker's obligations hereunder (individually a "Guarantor" and collectively, the "Guarantors") to any claim of set-off with respect to, and cannot be applied by Maker or any Guarantor to any payments required by this Note. Any Cash Collateral in Lender's possession shall be non-interest bearing and will be commingled with Lender's general funds. Holder may but shall not be obligated to apply any Cash Collateral to cure any default by Maker hereunder, in which event Maker shall promptly restore any amount so applied. Within 15 days after the Note is fully satisfied, the then remaining Cash Collateral balance will be returned to Maker by Holder

**(3) Location of Vehicle.** Unless otherwise noted on a Loan Schedule, Maker will garage the Vehicle and other Collateral at the notice address as listed above and, other than for operating the Vehicle, shall not remove the Vehicle therefrom unless Maker gives Lender written notice of such removal and the new location where the Vehicle will be garaged at least 30 days prior to removal and executes such documents as Lender requires to continue the perfection of its security interest.

**(4) Representations and Warranties.** To induce Lender to fund this Note, Maker and all Guarantors represent and warrant that: **(A)** Maker, if a corporation, limited liability corporation or limited liability company, is duly organized and in good standing under the laws of the state of its organization, is duly qualified to do business in every jurisdiction where its operations conducted make such qualification necessary; **(B)** they have the power to execute this Note and deliver same to Lender. **(C)** The execution, delivery and performance by Maker and any Guarantors of this Note have been authorized by all requisite actions of Maker and will not violate any provisions of any other agreement or contract to which Maker or any Guarantor is a party. **(D)** As of the date of funding of the Note, Maker has good, indefeasible and merchantable title to and ownership of the Collateral, free and clear of all liens, claims, security interests and encumbrances except those of Lender; **(E)** The security interest granted by Maker to Lender in the Collateral constitutes a valid first perfected lien and security interest in the Collateral; **(F)** There is no litigation pending against Maker or any Guarantor that would, if adversely determined, materially impair the right of Maker to carry on business substantially as now conducted or would materially adversely affect the financial condition of Maker or the respective Guarantors. **(G)** Maker is not in material default in the performance, observance or fulfillment of the obligations, covenants or conditions contained in any agreement or instrument to which Maker is a party; **(H)** Maker, to the best of its knowledge, is not in breach of, in default under or in violation of, any applicable law, decree, order, rule or regulation which may materially and adversely affect it, or any indenture, contract, agreement, deed, lease, loan agreement, commitment, bond, note, deed of trust, restrictive covenant, license or to any instrument or obligation to which Maker is a party or by which Maker is bound, or to which any of Maker's assets are subject; **(I)** Maker has and/or will comply with all laws, ordinances, regulations, federal, state and local, applicable to Maker and to Maker's business, **(J)** the financial statements previously to Lender as part of Lender's credit review fully and fairly present the assets, liabilities and financial condition of Maker as of the respective dates thereof and for the periods covered thereby and that there were no omissions of other facts or circumstances therefrom which were, are or may be material and that there has been no material adverse change therein since the date of such financial statements. **(K)** they have filed or caused to be filed all Federal, State and local tax returns and have paid or caused to be paid all taxes as shown on such returns, as and if audited; **(L)** All Collateral will be used by Maker solely for its business purposes and, therefore, this

EXHIBIT

1

Note is NOT governed by the New York Motor Vehicle Retail Leasing Act and (M) All representations and warranties of Maker are true at the time of Maker's execution of this Agreement and shall survive the execution, delivery and acceptance hereof

(5) Covenants of Maker   So long as the Note remains outstanding, Maker, and Guarantor(s) where applicable, will comply with the following provisions and wherever applicable, promptly provide to Lender such evidence of compliance as may be requested by Lender to wit: (A) Maker shall comply with all applicable laws with respect to the Vehicle and its operation and use and permit the Vehicle to be operated only by drivers holding a valid license to operate the Vehicle. (B) Maker shall have and maintain all permits, licenses, consents, authorizations and approvals necessary or desirable for the operation of its business and the use and operation of the Vehicle. (C) Maker shall, at its sole cost and expense (i) keep the Vehicle registered in conformity with the laws of the states of operation, with such registration and the title for the Vehicle including THE PERFECTION OF THE SECURITY INTEREST FOR THE BENEFIT OF LENDER, (ii) provide the original title to the Vehicle issued by the State where the Vehicle is registered and a copy of the motor vehicle registration for the Vehicle to Lender within 5 days after Maker's receipt of same and, if such registration does not contain the proper license plate number of the Vehicle, Maker will simultaneously provide such license plate number to Lender; and (iii) have the Vehicle timely inspected in accordance with all applicable laws and make any and all repairs that are necessary to enable the Vehicle to pass such inspections. (D) Maker shall, at its sole cost and expense, obtain insurance policies from an insurance company licensed to do business in the state where the Vehicle is registered that has a minimum A.M. Best's rating of B+ or better to protect the interests of Lender and/or Maker against collision damage, comprehensive fire and theft loss, and liability for bodily injury and property damage, as follows: (i) Bodily Injury Liability: MINIMUM $500,000.00/$1,000,000.00; (ii) Property Damage Liability: MINIMUM $250,000.00; (iii) Collision Damage to Vehicle: UNPAID LOAN BALANCE WITH MAXIMUM DEDUCTIBLE OF $1,000.00 and (iv) Comprehensive Fire & Theft: UNPAID LOAN BALANCE WITH MAXIMUM DEDUCTIBLE $1,000.00. Lender must be named as mortgagee and loss payee as its interest may appear. Maker shall deliver an original of each Policy providing such coverages (or such other evidence thereof as Lender may require) to Lender prior to the Commencement Date. If Maker fails to obtain or at any time maintain a Policy, Lender may at its sole option either (a) provide such insurance and charge the cost thereof to Maker or (b) elect not to provide such insurance and treat such failure of Maker as an Event of Default. Each Policy shall name Lender and its Assignees as mortgagee and loss payee as its interests may appear and include an endorsement to the effect that the carrier will give Lender at least ten (10) days' prior written notice of the effective date of any alteration or cancellation of the Policy, and that as to the interest or coverage of Lender or any Assignee, the Policy shall not be suspended, forfeited or in any manner prejudiced by any default, misrepresentation or other breach of warranty, condition or covenant by Lender or Maker under this Lease or the Policy. Upon the occurrence or later discovery of any damage to or loss of the Vehicle (whether by accident, fire, theft, vandalism or otherwise), Maker shall immediately notify Lender thereof by telephone, provide written notice thereof to Lender within 24 hours, and promptly submit any required notifications and reports to the appropriate law enforcement agencies (with copies thereof provided to Lender). Maker hereby appoints each of Lender (and any Assignee) as Maker's attorney-in-fact to make and settle all insurance claims in their respective sole discretion, receive payment of all insurance proceeds and other amounts, execute and endorse in Maker's name and on Maker's behalf all documents, checks or drafts relating thereto and apply same to payment of any damage or loss to Lender's or Assignee's interests. Other than for Maker's actual receipt of insurance proceeds, Maker's liability to Lender for the full and timely repayment of the Note shall not be reduced or diminished by Maker's compliance with the terms of this subsection of the Note. (E) Maker shall not sell, convey, assign, lease, abandon or otherwise transfer or dispose of, voluntarily or involuntarily, any of the Collateral. (F) Maker will send written notification to Lender, attention President, by certified mail within 5 days upon learning of the institution of any suit or administrative proceeding, whether or not the claim is considered by Maker to be covered by insurance against Maker, with respect to the Collateral or directly against the Collateral. (G) If requested by Lender, Maker shall forward to Lender or cause to be forwarded to Maker, annual and final year end (whether it be calendar or fiscal) accounting balance sheet and profit and loss statements within ninety (90) days from each accounting year end. (H) Maker will at all reasonable times permit the Lender to enter into and upon any premises where the Collateral is located for the purpose of inspecting same or otherwise protecting the interests of Lender therein. (I) Maker will maintain the Collateral in good condition and repair (normal wear and tear excepted) and in accordance with the recommendations of the respective manufacturer(s) and will pay and discharge, or cause to be paid and discharged, when due, the cost of repairs or maintenance, and pay or cause to be paid all rent due on the premises where any Collateral is located. (J) If requested by Lender, Maker shall obtain and deliver to Lender any and all landlord's and mortgagee's waivers, estoppel certificates and other similar documents to confirm, among other things, that such persons have no interest in the Collateral. (K) Provide Lender with an ACH Form signed by Maker permitting the automated checking accounting charge by Lender to facilitate payments under this Note. (L) Maker will substantially and timely comply at all times with other agreements to which Maker is a party. (M) Maker will promptly pay and discharge or cause to be paid and discharged, when due any and all taxes (including, without limitation, all sales and personal property taxes), assessments and governmental and other charges, levies or claims levied or imposed, which are or which if unpaid might become a lien or charge upon the Collateral or otherwise provided however that nothing contained herein shall be construed as prohibiting Maker or any Guarantor from contesting in good faith the validity or amount of any such taxes or assessments. (N) Maker will timely defend any claim by a third party relating to the possession of, or interest in, the Collateral. (O) Allow Lender the right, without any Lender obligation, to make any or all payments to creditors (including but not limited to the Landlord of the Premises, any taxing authorities, any state, local or municipal agencies) as shall be necessary to preserve Lender's rights and Lender's security interest(s) and/or mortgages in the Collateral and Maker and any such sums paid by Maker shall be added to the Note's principal and shall also be subject to interest. (P) Maker will hold and save Lender free and harmless (i) from any causes of action, claims, damages and liabilities due to the actions or inactions of Maker, Maker's officers, directors and employees, and shall pay for Lender's reasonable attorney fees to defend Lender against any such claim, and, (ii) against all loss, liability, damage, and expense, including but not limited to reasonable attorney's fees, suffered or incurred by Lender due to Maker's and/or any Guarantor's default under this Agreement; and, (Q) Permit Lender to act as Maker's attorney-in-fact to execute, either before or after disbursement of the Note proceeds, all documents necessary to perfect Lender's security interests or mortgages in the Collateral and to supply missing information or correct obvious errors in this Note or other documents executed in connection herewith

(6) Lender's Consent   Except with the prior written consent of Lender, which shall not be unreasonably withheld: (A) Maker and the Guarantor(s) will not, (i) make any material change in organization or management or the manner in which Maker's business is conducted, (ii) become party to any merger or consolidation with any company or entity of any kind whatsoever or sell substantially all of its assets, liquidate or dispose of its business and/or, (iii) create, or permit to be created or incurred, any subordinate mortgages, security interests, liens or encumbrances against the Collateral and, (B) Maker, if a Corporation or Limited Liability Company, will not issue any equity interest (including but not limited to capital stock) issued pursuant to stock splits or dividends), warrants, rights and options for consideration or otherwise

(7) Events of Default   Any of the following occurrences shall constitute a default under this Note (A) the non-payment when due of any installment required to be made hereunder and such default continues for 5 days after written notice to Maker; (B) failure to provide the original title to the Vehicle to Lender within 5 days after Maker's receipt of same; and/or (C) failure to perform any other requirement of this Note or of any other agreement delivered by Maker to Lender and such default continues for 5 days after written notice to Maker and/or (D) if the Collateral or a significant part of Maker's assets is subject to levy or execution or other judicial process and the same is not removed or bonded within 15 days after any lien is placed thereon; and/or (E) if any of the representations and/or warranties detailed in paragraph (4) above turn out not to be true, and/or (F) There shall be a judgment or judgments against Maker or any Guarantor for an amount in excess of $10,000.00 that remains unpaid for a period of thirty days following the entry thereof, without obtaining a stay of execution or causing such judgment to be bonded; and/or (G) If Maker and/or any Guarantor fails to either comply with or abide by the Covenants detailed in paragraph (5) above; and/or (H) if any of the following events occur with respect to Maker or any Guarantor: (i) default in respect of any liability, obligation or agreement with Lender; (ii) death, incompetence, dissolution, termination of existence, change of controlling ownership, and/or insolvency; (iii) commencement of any bankruptcy or insolvency proceedings and the same is not dismissed

within 30 days. (iv) appointment of a receiver or an assignment for the benefit of creditors. (v) the whole or partial suspension or liquidation of either of their usual business. (v) failure to pay any tax when due. (vi) having made or making any misrepresentation to the Lender for the purpose of obtaining credit or an extension of credit; and (vii) default with respect to the real estate lease for Maker's principal place of business, and/or (l) if any Additional Equipment as described on a Loan Schedule is removed from its respective Cab/Chassis.

(8) Remedies on Default  In the event of the occurrence of any default hereunder, then the rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law and may be exercised singly or concurrently. (A) at the option of Lender, all past  present and future payments required by this Note shall immediately become due and payable. (B) Maker and all Guarantors will jointly and severally pay to Lender such further amount as shall be sufficient to cover the cost and expense of enforcing this Note  including but not limited to  reasonable compensation to the attorneys of Lender (regardless of whether any action is commenced and if so commenced  whether incurred at trial or appeal and whether incurred prior to or after the bankruptcy of Maker) costs and expenses directly or indirectly related to the Collateral (i.e.  costs and expenses for pursuing, searching for, receiving, taking, keeping, storing, advertising, and selling the Collateral). (C) Maker will, at request of Lender, return all of the Collateral, at Maker's sole cost and expense  to any place designated by Lender that is within 250 miles of Maker's notice address as is detailed above. (D) Lender may, at its sole and exclusive option, perform for Maker any of the provisions of this Note required to be performed by Maker and any monies expended in so doing shall be chargeable with interest computed at 15.9% per annum and added to the then balance due on the Note. (E) Lender shall have all the rights, remedies  and privileges with respect to repossession  retention and sale of the collateral and disposition of the proceeds as are accorded to a secured party by the applicable sections of the Uniform Commercial Code respecting "Default" in effect as of the date hereof, and Maker shall remain liable for any deficiency resulting from a sale of the Collateral and shall pay any such deficiency forthwith on demand (Lender will give Maker reasonable notice of the time and place of any public sale of the Collateral, or of the time after which any private sale or any other intended disposition thereof is to be made). The requirements of reasonable notice will be met if such notice is mailed  postage prepaid, to the Maker's notice address no less than 10 days before the time of sale or disposition. It is agreed that a sale to a vendor is a commercially reasonable method of disposition (but shall not be deemed the only commercially reasonable method of disposition) and that Lender and/or its representative may purchase all or part of the Collateral at a public or private sale. (F) at the option of Lender, increase the interest rate on the outstanding indebtedness evidenced by this Note to 15.9% per annum, but not in excess of the highest rate allowable by law, until such time as Lender receives payment in full. (G) Lender shall have the express right (without prior demand or notice and without hereby waiving or prejudicing any other rights, powers or remedies under this Agreement) to enter any premises under the control of Maker or any Guarantor, without any obligation to pay rent to Maker or any Guarantor  by Lender's own means through self-help and without judicial process, breaking locks where necessary but without breaching the peace, or with legal process, in which case Maker agrees not to resist or interfere, and  (i) render the Collateral unusable without permanently diminishing the Collateral's value  and/or (ii) take possession of the Collateral for the purpose of disposition in a commercially reasonable manner  protection, and/or removal; and/or (H) The right to take such other and further action as Lender may at law or in equity be entitled to take

(9) Costs and Expenses  Maker shall pay (or at Lender's option, reimburse Lender for) all recording and filing fees and other costs and expenses incurred in connection with the transactions contemplated by this Agreement. Maker further agrees to pay Lender a $425.00 document preparation fee prior to Lender funding this Note and a $195.00 disposition charge at loan termination as reimbursement for all Lender's expenses associated with the release and transfer of liens and title with respect to the Collateral

(10) Maximum Rate  The maximum interest and fees and charges in the nature of interest or finance charges shall not exceed those permitted by applicable law (the "Legal Limits") and any provision which would, on its face, require such payments in excess of the Legal Limits is hereby amended to require payments of only such amounts permitted by the Legal Limits. In the event of any payment in excess of the Legal Limits  such excess payment shall be automatically credited to principal as a permitted partial prepayment  applied to the installments in the inverse order of their maturities, without any prepayment fee being due with respect thereto

(11) Governing Law, Waiver of Jury Trial, Service of Process, Counterclaims, Jurisdiction, Venue  This Note  the following Irrevocable Guaranty, and any and all present or future obligations or agreements directly or indirectly related thereto shall be governed and construed in accordance with the laws of the State of New York. In any litigation with Lender, whether or not arising out of or relating to this Note, (A) all parties to this Note and the following Irrevocable Guaranty expressly waive trial by jury and agree that proper service of process can be effected by sending the required documents to the intended recipient at the recipient's last notice address as known by the sender via the United States Postal Service, by both certified mail, return receipt requested and by first class mail. (B) Maker and all Guarantors expressly waive the right to interpose any defense based on extension, partial payment, any statute of limitations, any claim of laches  and any set-off  counterclaim or cross-claim of any nature or description (including but not limited to war, act of God  governmental regulation, strike, loss, damage, destruction, obsolescence, inability of Debtor to use the Collateral  or any part thereof for any reason), other than actual  payments made by Maker pursuant to this Note (notwithstanding the aforementioned, to the extent that failure to interpose a set-off, counterclaim or cross-claim in an action brought by Lender would forever bar Maker or Guarantor from pursuing such set-off, counterclaim or cross-claim against Lender in a separate action, such set-off  counterclaim or cross-claim may be interposed in any action brought by Lender); (C) Maker and all Guarantors irrevocably submit to the jurisdiction of the courts of the State of New York and of the United States having jurisdiction in any of the following counties within the State of New York: New York, Queens, Kings, Bronx, Nassau and/or Suffolk, regardless of the venue and jurisdiction provisions of such other obligations and agreements, and agree not to raise and waive any objection to or defense based upon the jurisdiction or venue of any such court or based upon forum non conveniens. Maker and all Guarantors agree not to bring any action or other proceeding with respect to this Note or with respect to any of its obligations hereunder in any court other than the aforementioned courts unless such courts of the State of New York and of the United States determine that they do not have jurisdiction in the matter. Notwithstanding the aforementioned, litigation regarding possession of the Collateral may be brought in any applicable jurisdiction

(12) No Waiver  The Lender shall not by any act of delay, commission  failure to act or otherwise be deemed to have waived any right, power, privilege or remedy hereunder  and no waiver whatever shall be valid unless in writing signed by Lender, and then only to the extent therein set forth, nor shall any single or partial exercise of any right, power, privilege or remedy hereunder preclude any further exercise thereof, or the exercise of any other right, power, privilege or remedy. A waiver by Lender of any right or remedy under the terms of this Note or the following Irrevocable Guaranty on any one occasion shall not be construed as a bar to any right or remedy which Lender would otherwise have had on any future occasion. No executory agreement, unless in writing and signed by Lender  and no course of dealing between Maker and/or Guarantors and Lender shall be effective to change or modify or discharge in whole or in part this Note unless in writing and signed by Lender. No notice to or demand on Maker of any Guarantor in any case shall entitle Maker or any such Guarantor to any other or further notice or demand in the same  similar other circumstances

(13) Residual Value  As regards any Loan Schedule that references this Note  the total amount of the column captioned "Residual Value" must be paid to Lender on the: (a) on the 7th day following the last required weekly payment for those Loan Schedules requiring weekly payments; (b) the 14th day following the last required bi-weekly payment for those Loan Schedules requiring bi-weekly payments; (c) the 15th day following the last required semi-monthly payment for those Loan Schedules requiring semi-monthly payments; and  (d) the 30th  day following the last required monthly payment for those Loan Schedules requiring monthly payments

(14) Miscellaneous  (A) All parties to this Note and the following Irrevocable Guaranty  in expressly waive, to the extent permitted by law, presentment for payment, notice of dishonor  protest, notice of protest of this Note or the following Irrevocable Guaranty  other notice of any kind and all demands whatsoever  (B) agree not to make any claim against one another for any consequential damages  and  (iii) agree that all terms and

provisions of this Note and the following Irrevocable Guaranty (a) shall be binding upon and shall inure to the benefit of and be enforceable by the parties hereto, their respective legal representatives, permitted successors and permitted assigns, and, (b) are final expressions of the agreements between Maker and Guarantors and Lender and may not be contradicted by evidence of any alleged oral agreement, (iv) represent and warrant that the other party, its agents, servants or employee have made no representation or statement whether oral or in writing relating to or concerning this Note other than specifically set forth herein, (v) agree that this Note and the following Irrevocable Guaranty may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. (B) Any provision of this Note or the Irrevocable Guaranty below that may be prohibited by applicable law shall be void and deemed deleted therefrom without invalidating any other provision thereof. (C) Lender will respond to Maker's reasonable requests for a Note payoff amount as of the specific date requested by Maker but (i) additional per diem interest will be due to Lender if the payoff amount is received by Lender after such specific date, and (ii) if the payoff amount is received by Lender before such specific date, the incremental interest will be retained by Lender as an administrative fee. (D) In the event that any word, sentence, paragraph or article of this Note or the following Irrevocable Guaranty is found to be void or voidable, the balance of the Note shall nevertheless be legal and binding with the same force and effect as though the void or voidable parts were deleted. (E) Time is of the essence in respect to each provision of this Note and the Irrevocable Guaranty below. (F) Words used in this Note and the following Irrevocable Guaranty (i) as singular shall be construed to mean the plural where necessary, and (ii) as plural shall be construed to mean the singular where necessary. (G) The necessary grammatical changes required to make the provisions of this Note and the following Irrevocable Guaranty apply to corporations, entities or persons, women or men, shall in all cases be assumed as though fully expressed. (H) The Section titles contained in this Agreement are and shall be without substantive meaning or content of any kind whatsoever and are not a part of the agreement between the parties hereto. (I) The Lender may negotiate, assign and transfer this Note and any other document executed in connection herewith. (J) Maker may not transfer or assign this Note. (K) Maker hereby authorizes any of his/her/its employees to act on Maker's behalf to accept any Collateral and acknowledge receipt of same and Maker agrees that such acceptance shall be conclusive proof, as between Maker and Lender, that (i) any defects in the Collateral shall not reduce or diminish Maker's obligations under this Note; (ii) Lender has fully and satisfactorily performed all covenants and conditions to be performed by Lender under the Note; and, (iii) Lender should pay the seller of the Collateral. (L) By signing this Note and/or the Irrevocable Guaranty below, the undersigned who are either principals of Maker or a personal guarantor of its obligations, hereby provide written instruction to Lender or Lender's assignee authorizing review of his/her personal credit profile from a national credit bureau. Such authorization shall extend to obtaining a credit profile in connection herewith and subsequently for the purposes of update, renewal or extension of such credit or additional credit and for reviewing or collecting the resulting account. (M) To the extent that any communications and notices are required by this Note or the following Irrevocable Guaranty, if such communications and notices are in writing they shall be deemed to have been duly given if sent by United States mail, postage prepaid, to the parties at the address first above written, or at such other places or places as the party addressed may have designated by written notice to the other; and, (N) Notwithstanding the aforementioned, this Note and the following Irrevocable Guaranty may be executed, (i) in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, and (ii) by each party and forwarded to the intended recipient by email and/or facsimile transmission, and each such electronic copy shall be deemed to be an original and will be considered an electronic transaction under any and all electronic acts including the Uniform Electronic Transfer Act and/or the Electronic Signatures in Global and National Commerce Act.

**(15)** No Warranty   The Collateral and/or the suppliers and/or manufacturers thereof have been selected by Maker based on Maker's own judgment. Maker requests Lender to either order the Collateral and/or arrange for its delivery to Maker and/or pay for it upon Maker's receipt thereof. Maker acknowledges that Lender did not and does not manufacture, deliver or install the Collateral nor does Lender represent the manufacturer or supplier thereof. LENDER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE MERCHANTABILITY AND PERFORMANCE OF THE COLLATERAL OR OF THE COLLATERAL'S FITNESS FOR A PARTICULAR PURPOSE OR ITS COMPLIANCE WITH APPLICABLE LAW, AS BETWEEN MAKER AND LENDER. MAKER FINANCES THE COLLATERAL ON AN "AS-IS" BASIS. Maker may have rights against the supplier(s) and/or manufacturer(s) of the Collateral and, as such, Maker should contact each supplier and manufacturer for a description of any such rights.

Maker: Sid's, Inc. DBA Sids Towing and Recovery  by _____

Jason Matthews, President

Lender: Eastern Funding LLC  by _____   Print Name and Title ___ A. PODARNE  CA ___

IRREVOCABLE GUARANTY   Unless otherwise defined, words used herein shall have the same meaning as in the above Secured Promissory Note and Security Agreement (the "Note"). In consideration of Lender funding the Note, the undersigned hereby (A) irrevocably, absolutely and unconditionally jointly and severally guarantee to Lender, irrespective of the genuineness, validity, regularity or enforceability thereof, the full and punctual payment and performance by Maker of all of Maker's existing and future liabilities to Lender when due, by acceleration or otherwise whether arising by virtue of the Note or otherwise, (B) consent, without notice to the undersigned, to any and all extensions of time or terms of payment or modification of any of Maker's obligations to Lender, (C) agree that upon any default by Maker in the performance of any of Maker's obligations to Lender, Lender can proceed against one, some or all of the Guarantor(s) without first having to proceed against Maker, and, (D) hereby waive acceptance or notice of acceptance of this Irrevocable Guaranty. The signatures of the undersigned hereto are intended as an acknowledgment that they have read, understand and agree with all of the terms and conditions of this Irrevocable Guaranty and of the Note, and that several provisions of the Note specifically apply to this Irrevocable Guaranty. The provisions hereof may not be changed orally, but only by a writing signed by Lender. The undersigned Guarantor(s) represent and warrant to Lender that (i) unless otherwise previously disclosed to Lender in writing, no one other than the undersigned Guarantor(s) has any equity interest in Maker; and (ii) the actual percentage of each Guarantor's equity interest in Maker is detailed next to each respective Guarantor's signature.

| | |
|---|---|
| Jason Matthews | 100% |
| Notice Address: 31247 N 1850 Road Roseville IL  60963 | My Ownership Percentage of Maker |
| | |
| Notice Address _____ | ____% My Ownership Percentage of Maker |
| | |
| Notice Address _____ | ____% My Ownership Percentage of Maker |
| | ____% |

## Loan Schedule 001

for the Master Promissory Note and Security Agreement dated 03/18/2014 and known as Loan # 71337 (the "Loan") wherein the Maker is Sid's, Inc. DBA Sids Towing and Recovery with its notice address at 628 E Fairchild Street, Danville, IL 61832, and the Lender is Eastern Funding LLC d/b/a Specialty Vehicle and Equipment Funding Group, a subsidiary of Brookline Bank.

| | Year | Make | Model | Identification or Serial # | Initial Payment | Net Amt. Financed | Monthly Payment* | Remaining Payments | Residual Value |
|---|---|---|---|---|---|---|---|---|---|
| Cab Chassis | 2013 | Dodge | $5600 | 3C7WRMDL0DG508824 | $3,137.00 | $73,435.76 | $1,586.00 | 70 | $0.00 |
| Add'l Equip. | 2013 | Vulcan | 19'5 Steel Carrier | 19CEH849FH815 | | | | | |

* All of Maker's monthly payments will be due on the same day of the month as was the delivery date. For example, if the vehicle is delivered on the 16th day of the month Maker's next monthly payment would be due on the 16th day of the month following the month the vehicle was delivered to Maker. However (a) if a payment day falls on a Bank holiday or weekend, Maker's next payment will be due on the following business day; (b) if the vehicle is delivered on the 31st day of a month, Maker's next monthly payment would be due on the last day of the month following the month the vehicle was delivered to Maker; (c) if the vehicle is delivered on the 29th or 30th day of a month, the February payments would be due on February 29th during leap years and on February 28th during all years other than leap years.

Lender will respond to Maker's reasonable requests for a Note payoff amount as of the specific date requested by Maker, but: (i) additional per diem interest will be due to Lender if the payoff amount is received by Lender after such specific date; and, (ii) if the payoff amount is received by Lender before such specific date, the incremental interest will be retained by Lender as an administrative fee.

Electronic copies of this executed document will have the same force and effect as original executed copies, but Maker and Lender agree that the version of this document with Lender's original signature shall constitute the original authoritative version.

Capitalized terms used herein shall have the same meaning as is detailed in the Loan.

**GARAGING ADDRESS** (if different from Maker's notice address): _____

I, Receive this 18 day of _MARCH_, 2014, this Loan Schedule is made a part of the above-referenced Master Promissory Note and Security Agreement.

Maker, by _____

Jason Matthews-President

Lender, by _____

Print Name and Title: A POSDANG CM

# CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO. |
|---|---|---|---|---|---|
| 3C7WRMDL6DG595825 | 2013 | DODGE | | TRUCK | 14104677040 |

3C7WRMDL6DG595825

| DATE ISSUED | ODOMETER | CCM | MOBILE HOME SQ. FT. | PURCHASED | TYPE TITLE |
|---|---|---|---|---|---|
| 04/14/14 | | | | 03/18/14 NEW | ORIGINAL |

MAILING ADDRESS

LEGEND(S)

MILEAGE NOT REQUIRED

EASTERN FUNDING LLC
538 BROADHOLLOW RD
MELVILLE NY 11747-3676

OWNER(S) NAME AND ADDRESS
SIDS INC
DBA SIDS TOWING & RECOVERY
628 E FAIRCHILD ST
DANVILLE IL 61832

FIRST LIENHOLDER NAME AND ADDRESS
EASTERN FUNDING LLC
538 BROADHOLLOW RD
MELVILLE NY 11747-3676

SECOND LIENHOLDER NAME AND ADDRESS

### RELEASE OF LIEN
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

**NEW LIEN ASSIGNMENT:** The information below must be on an application for title and presented to the Secretary of State.

Secured Party: _____ Address: _____

▶ Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

### ASSIGNMENT OF TITLE
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
**WARNING-ODOMETER DISCREPANCY.**

"If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair-market value unless this document is accompanied by a salvage application."

| NO | TENTHS |
|---|---|

ODOMETER READING
Signature(s) of Seller(s) _____

Printed Name(s) of Seller(s) _____  DATE OF SALE _____
I am aware of the above odometer certification made by seller.

Signature(s) of Buyer(s) _____ Printed Name _____

I Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any.
IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF
THE STATE OF ILLINOIS AT SPRINGFIELD

CONTROL NO.

J8791050

*Jesse White*
JESSE WHITE, Secretary of State

EXHIBIT
2

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.

| Place of Execution:<br>Melville, NY | MASTER PROMISSORY NOTE and SECURITY AGREEMENT<br>(this "Note" or the "Note") | Loan # 71529<br>Date: 07/01/2014 |
|---|---|---|

**FOR VALUE RECEIVED**, Sid's, Inc. DBA Sids, Towing and Recovery ("Maker"), with a principal place of business and notice address at 628 E. Fairchild Street Danville, IL 61832, promises to pay to the order of Eastern Funding LLC d/b/a Specialty Vehicle and Equipment Funding Group, **a subsidiary of Brookline Bank** ("Lender"), at 538 Broadhollow Road, Suite 221, Melville, NY 11747 or at such other place as may be designated in writing by Lender, the Loan Amount(s), plus interest thereon computed on the basis of a 360 day year, payable in accordance with the terms and conditions detailed on one or more Loan Schedules referencing this Note. Each installment payment received by Lender pursuant to a Loan Schedule shall first be applied to the payment of interest on the respective principal sum, or so much thereof as shall from time to time remain unpaid, and then applied at Lender's discretion. No Note funding shall occur before the Collateral (defined below and specifically detailed on each Loan Schedule) is delivered to and accepted by Maker.

**(1)Payments.** If any payment or other amount due hereunder is not received by Lender within 10 days of its due date, a late charge of 5% of each payment so overdue may be charged by Lender to defray the expenses incident to processing such payment. Any such late charge shall not reduce or diminish Maker's obligation to pay per diem interest. Maker may prepay this Note in full (not in part) at any time by paying Lender an amount equal to: (A) all charges and fees then due and owing to Lender; (B) all payments of principal and interest due and owing to Lender to the date of prepayment; and, (C) a prepayment fee equal to 5% of the Note's then outstanding principal balance if the prepayment is made before the Note's first anniversary, declining by 1% annually until it reaches 2% (i.e., 5%, 4%, 3% 2% and 2% thereafter). Partial prepayments received by Lender will: (i) be non-interest bearing; and, (ii) if sufficient to pay the entire amount of the next scheduled monthly installment of principal and interest, be applied thereto on the due date thereof. "In the event that either a check tendered by or on behalf of Maker or an authorized, automatic payment on behalf of Maker is not duly honored by the institution on which it is drawn for ANY reason, notwithstanding anything else in this Agreement to the contrary, Lender shall be permitted to charge a fee of $50 per dishonor, but not in excess of any amount permitted by the law of the jurisdiction of Maker's principal place of business detailed above." If on two occasions within any 12 month period Maker's checks and/or Maker's authorized, automatic payments to Lender are not honored when presented in due course to the bank on which they are drawn, Lender shall be permitted to: (a) require payments hereunder to be made by certified check, postal money order, or teller's check; and/or, (b) increase the annual interest rate then being charged by 0.5%. In addition to the 0.5% detailed in the preceding sentence, if Maker withdraws Maker's authorization for Lender to automatically debit Maker's account pursuant to the Electronic Funds Transfer Act, Lender shall be permitted to increase the annual interest rate then being charged by 0.5%.

**(2) Grant of Security Interest.** In order to secure payment of this Note and any other direct or indirect, absolute or contingent indebtedness or liability of Maker to Lender, due or to become due, now existing or hereafter arising, including all future advances or loans which may be made at Lender's option (all hereinafter called the "obligations"), Maker hereby grants to Lender, and Lender hereby accepts, a first priority perfected security interest in and to: (A) each Cab/Chassis (including engine) and Additional Equipment described on one or more Loan Schedules referencing this Note; (B) all accessions, parts, replacements, substitutions, accessories, attachments and appurtenances in any way used with, attached to or installed in or on the Cab/Chassis (collectively referred to as a "Vehicle"); (C) any insurance proceeds received in connection with the Vehicle; and, (D) the $0.00 cash collateral (the "Cash Collateral") given to Lender before the Note is funded (all of the foregoing shall be collectively referred to as the "Collateral"). Maker will execute and deliver to Secured Party such state motor vehicle lien applications ("Motor Vehicle Documents") and Uniform Commercial Code financing statements, and all amendments thereto and extensions thereof ("UCC Documents") necessary in Maker's sole discretion to perfect or maintain the security interest herein granted. The title to each Motor Vehicle shall reflect the Lender or its nominee as the sole lien holder thereon (including pursuant to any applicable electronic titling statutes) and, without the prior written consent of Lender, Maker shall not remove or cause the removal of such lien holder notation. Maker shall cause each title issued with respect to a Motor Vehicle to be delivered directly to Lender from the applicable motor vehicle authority or, if not possible or if Maker receives any such title, Maker shall forthwith deliver such title to Lender or its designee. To the extent permitted by applicable law, Lender is authorized to sign and file such Motor Vehicle Documents, titles and UCC Documents as Maker's attorney-in-fact. The Cash Collateral does not entitle Maker or any person or entity that has guaranteed Maker's obligations hereunder (individually a "Guarantor" and collectively, the "Guarantors") to any claim of set-off with respect to, and cannot be applied by Maker or any Guarantor to any payments required by this Note. Any Cash Collateral in Lender's possession shall be non-interest bearing and will be commingled with Lender's general funds. Holder may but shall not be obligated to apply any Cash Collateral to cure any default by Maker hereunder, in which event Maker shall promptly restore any amount so applied. Within 15 days after the Note is fully satisfied, the then remaining Cash Collateral balance will be returned to Maker by Holder.

**(3) Location of Vehicle.** Unless otherwise noted on a Loan Schedule, Maker will garage the Vehicle and other Collateral at the notice address as listed above and, other than for operating the Vehicle, shall not remove the Vehicle therefrom unless Maker gives Lender written notice of such removal and the new location where the Vehicle will be garaged at least 30 days prior to removal and executes such documents as Lender requires to continue the perfection of its security interest.

**(4) Representations and Warranties.** To induce Lender to fund this Note, Maker and all Guarantors represent and warrant that: (A) Maker, if a corporation, limited liability corporation or limited liability company, is duly organized and in good standing under the laws of the state of its organization, is duly qualified to do business in every jurisdiction where its operations conducted make such qualification necessary; (B) they have the power to execute this Note and deliver same to Lender; (C) The execution, delivery and performance by Maker and any Guarantors of this Note have been authorized by all requisite actions of Maker and will not violate any provisions of any other agreement or contract to which Maker or any Guarantor is a party; (D) As of the date of funding of the Note, Maker has good, indefeasible and merchantable title to and ownership of the Collateral, free and clear of all liens, claims, security interests and encumbrances except those of Lender; (E) The security interest granted by Maker to Lender in the Collateral constitutes a valid first perfected lien and security interest in the Collateral; (F) There is no litigation pending against Maker or any Guarantor that would, if adversely determined, materially impair the right of Maker to carry on business substantially as now conducted or would materially adversely affect the financial condition of Maker or the respective Guarantors; (G) Maker is not in material default in the performance, observance or fulfillment of the obligations, covenants or conditions contained in any agreement or instrument to which Maker is a party; (H) Maker, to the best of its knowledge, is not in breach of, in default under, or in violation of, any applicable law, decree, order, rule or regulation which may materially and adversely affect it, or any indenture, contract, agreement, deed, lease, loan agreement, commitment, bond, note, deed of trust, restrictive covenant, license or to any instrument or obligation to which Maker is a party or by which Maker is bound, or to which any of Maker's assets are subject; (I) Maker has and/or will comply with all laws, ordinances, regulations, federal, state and local, applicable to Maker and to Maker's business; (J) the financial statements previously to Lender as part of Lender's credit review fully and fairly present the assets, liabilities and financial condition of Maker as of the respective dates thereof and for the periods covered thereby and that there were no omissions of other facts or circumstances therefrom which were, are or may be material and that there has been no material adverse change therein since the date of such financial statements; (K) they have filed or caused to be filed all Federal, State and local tax returns and have paid or caused to be paid all taxes as shown on such returns, as and if audited; (L) All Collateral will be used by Maker solely for its business purposes and, therefore, this

EXHIBIT

3

Note is NOT governed by the New York Motor Vehicle Retail Leasing Act; and, (M) All representations and warranties of Maker are true at the time of Maker's execution of this Agreement and shall survive the execution, delivery and acceptance hereof.

(5) Covenants of Maker. So long as the Note remains outstanding, Maker, and Guarantor(s) where applicable, will comply with the following provisions and wherever applicable, promptly provide to Lender such evidence of compliance as may be requested by Lender, to wit: (A) Maker shall comply with all applicable laws with respect to the Vehicle and its operation and use and permit the Vehicle to be operated only by drivers holding a valid license to operate the Vehicle; (B) Maker shall have and maintain all permits, licenses, consents, authorizations and approvals necessary or desirable for the operation of its business and the use and operation of the Vehicle; (C) Maker shall, at its sole cost and expense: (i) keep the Vehicle registered in conformity with the laws of the states of operation, with such registration and the title for the Vehicle including THE PERFECTION OF THE SECURITY INTEREST FOR THE BENEFIT OF LENDER; (ii) provide the original title to the Vehicle issued by the State where the Vehicle is registered and a copy of the motor vehicle registration for the Vehicle to Lender within 5 days after Maker's receipt of same and, if such registration does not contain the proper license plate number of the Vehicle, Maker will simultaneously provide such license plate number to Lender; and, (iii) have the Vehicle timely inspected in accordance with all applicable laws and make any and all repairs that are necessary to enable the Vehicle to pass such inspections; (D) Maker shall, at its sole cost and expense, obtain insurance policies from an insurance company licensed to do business in the state where the Vehicle is registered that has a minimum A.M. Best's rating of B+ or better to protect the interests of Lender and/or Maker against collision damage, comprehensive fire and theft loss, and liability for bodily injury and property damage, as follows: (i) Bodily Injury Liability: MINIMUM $500,000.00/$1,000,000.00; (ii) Property Damage Liability: MINIMUM $250,000.00; (iii) Collision Damage to Vehicle: UNPAID LOAN BALANCE WITH MAXIMUM DEDUCTIBLE OF $1,000.00; and, (iv) Comprehensive Fire & Theft: UNPAID LOAN BALANCE WITH MAXIMUM DEDUCTIBLE $1,000.00. Lender must be named as mortgagee and loss payee as its interest may appear. Maker shall deliver an original of each Policy providing such coverages (or such other evidence thereof as Lender may require) to Lender prior to the Commencement Date. If Maker fails to obtain or at any time maintain a Policy, Lender may at its sole option either (a) provide such insurance and charge the cost thereof to Maker, or (b) elect not to provide such insurance and treat such failure of Maker as an Event of Default. Each Policy shall name Lender and its Assignees as mortgagee and loss payee as its interests may appear and include an endorsement to the effect that the carrier will give Lender at least ten (10) days' prior written notice of the effective date of any alteration or cancellation of the Policy, and that as to the interest or coverage of Lender or any Assignee, the Policy shall not be suspended, forfeited or in any manner prejudiced by any default, misrepresentation or other breach of warranty, condition or covenant by Lender or Maker under this Lease or the Policy. Upon the occurrence or later discovery of any damage to or loss of the Vehicle (whether by accident, fire, theft, vandalism or otherwise), Maker shall immediately notify Lender thereof by telephone, provide written notice thereof to Lender within 24 hours, and promptly submit any required notifications and reports to the appropriate law enforcement agencies (with copies thereof provided to Lender). Maker hereby appoints each of Lender (and any Assignee) as Maker's attorney-in-fact to make and settle all insurance claims in their respective sole discretion, receive payment of all insurance proceeds and other amounts, execute and endorse in Maker's name and on Maker's behalf all documents, checks or drafts relating thereto and apply same to payment of any damage or loss to Lender's or Assignee's interests. Other than for Maker's actual receipt of insurance proceeds, Maker's liability to Lender for the full and timely repayment of the Note shall not be reduced or diminished by Maker's compliance with the terms of this subsection of the Note; (E) Maker shall not sell, convey, assign, lease, abandon or otherwise transfer or dispose of, voluntarily or involuntarily, any of the Collateral; (F) Maker will send written notification to Lender, attention: President, by certified mail within 5 days upon learning of the institution of any suit or administrative proceeding, whether or not the claim is considered by Maker to be covered by insurance against Maker with respect to the Collateral or directly against the Collateral; (G) If requested by Lender, Maker shall forward to Lender or cause to be forwarded to Maker, annual and final year end (whether it be calendar or fiscal) accounting balance sheet and profit and loss statements within ninety (90) days from each accounting year end; (H) Maker will at all reasonable times permit the Lender to enter into and upon any premises where the Collateral is located for the purpose of inspecting same or otherwise protecting the interests of Lender therein; (I) Maker will maintain the Collateral in good condition and repair (normal wear and tear excepted) and in accordance with the recommendations of the respective manufacturer(s) and will pay and discharge, or cause to be paid and discharged, when due, the cost of repairs or maintenance, and pay or cause to be paid all rent due on the premises where any Collateral is located; (J) If requested by Lender, Maker shall obtain and deliver to Lender any and all landlord's and mortgagee's waivers, estoppel certificates and other similar documents to confirm, among other things, that such persons have no interest in the Collateral; (K) Provide Lender with an ACH Form signed by Maker permitting the automated checking accounting charge by Lender to facilitate payments under this Note; (L) Maker will substantially and timely comply at all times with other agreements to which Maker is a party; (M) Maker will promptly pay and discharge, or cause to be paid and discharged, when due any and all taxes (including, without limitation, all sales and personal property taxes), assessments and governmental and other charges, levies or claims levied or imposed, which are, or which if unpaid might become, a lien or charge upon the Collateral or otherwise, provided however that nothing contained herein shall be construed as prohibiting Maker or any Guarantor from contesting in good faith the validity or amount of any such taxes or assessments; (N) Maker will timely defend any claim by a third party relating to the possession of, or interest in, the Collateral; (O) Allow Lender the right, without any Lender obligation, to make any or all payments to creditors (including but not limited to the Landlord of the Premises, any taxing authorities, any state, local or municipal agencies) as shall be necessary to preserve Lender's rights and Lender's security interest(s) and/or mortgages in the Collateral and Maker and any such sums paid by Maker shall be added to the Note's principal and shall also be subject to interest; (P) Maker will hold and save Lender free and harmless: (i) from any causes of action, claims, damages and liabilities due to the actions or inactions of Maker, Maker's officers, directors and employees, and shall pay for Lender's reasonable attorney fees to defend Lender against any such claim; and, (ii) against all loss, liability, damage, and expense, including but not limited to reasonable attorney's fees, suffered or incurred by Lender due to Maker's and/or any Guarantor's default under this Agreement; and, (Q) Permit Lender to act as Maker's attorney-in-fact to execute, either before or after disbursement of the Note proceeds, all documents necessary to perfect Lender's security interests or mortgages in the Collateral and to supply missing information or correct obvious errors in this Note or other documents executed in connection herewith.

(6) Lender's Consent. Except with the prior written consent of Lender, which shall not be unreasonably withheld: (A) Maker and the Guarantor(s) will not: (i) make any material change in organization or management or the manner in which Maker's business is conducted; (ii) become party to any merger or consolidation with any company or entity of any kind whatsoever, or sell substantially all of its assets, liquidate or dispose of its business; and/or, (iii) create, or permit to be created or incurred, any subordinate mortgages, security interests, liens or encumbrances against the Collateral; and, (B) Maker, if a Corporation or Limited Liability Company, will not issue any equity interest (including but not limited to capital stock issued pursuant to stock splits or dividends), warrants, rights and options for consideration or otherwise.

(7) Events of Default. Any of the following occurrences shall constitute a default under this Note: (A) The non-payment when due of any installment required to be made hereunder and such default continues for 5 days after written notice to Maker; (B) failure to provide the original title to the Vehicle to Lender within 5 days after Maker's receipt of same, and/or (C) failure to perform any other requirement of this Note or of any other agreement delivered by Maker to Lender and such default continues for 5 days after written notice to Maker; and/or (D) if the Collateral or a significant part of Maker's assets is subject to levy or execution or other judicial process, and the same is not removed or bonded within 15 days after any lien is placed thereon; and/or (E) if any of the representations and/or warranties detailed in paragraph (4) above turn out not to be true; and/or (F) There shall be a judgment or judgments against Maker or any Guarantor for an amount in excess of $10,000.00 that remains unpaid for a period of thirty days following the entry thereof, without obtaining a stay of execution or causing such judgment to be bonded; and/or (G) If Maker and/or any Guarantor fails to either comply with or abide by the Covenants detailed in paragraph (5) above; and/or (H) if any of the following events occur with respect to Maker or any Guarantor: (i) default in respect of any liability, obligation or agreement with Lender; (ii) death, incompetence, dissolution, termination of existence, change of controlling ownership, and/or insolvency; (iii) commencement of any bankruptcy or insolvency proceedings and the same is not dismissed

within 30 days; (iv) appointment of a receiver or an assignment for the benefit of creditors; (iv) the whole or partial suspension or liquidation of either of their usual business; (v) failure to pay any tax when due; (vi) having made or making any misrepresentation to the Lender for the purpose of obtaining credit or an extension of credit; and, (vii) default with respect to the real estate lease for Maker's principal place of business; and/or (I) If any Additional Equipment as described on a Loan Schedule is removed from its respective Cab/Chassis.

**(8) Remedies on Default**. In the event of the occurrence of any default hereunder, then the rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law and may be exercised singly or concurrently: (A) at the option of Lender, all past, present and future payments required by this Note shall immediately become due and payable; (B) Maker and all Guarantors will jointly and severally pay to Lender such further amount as shall be sufficient to cover the cost and expense of enforcing this Note, including but not limited to: reasonable compensation to the attorneys of Lender (regardless of whether any action is commenced and if so commenced, whether incurred at trial or appeal, and whether incurred prior to or after the bankruptcy of Maker); costs and expenses directly or indirectly related to the Collateral (i.e., costs and expenses for pursuing, searching for, receiving, taking, keeping, storing, advertising, and selling the Collateral); (C) Maker will, at request of Lender, return all of the Collateral, at Maker's sole cost and expense, to any place designated by Lender that is within 250 miles of Maker's notice address as is detailed above; (D) Lender may, at its sole and exclusive option, perform for Maker, any of the provisions of this Note required to be performed by Maker and any monies expended in so doing shall be chargeable with interest computed at 15.9% per annum and added to the then balance due on the Note; (E) Lender shall have all the rights, remedies, and privileges with respect to repossession, retention and sale of the collateral and disposition of the proceeds as are accorded to a secured party by the applicable sections of the Uniform Commercial Code respecting "Default" in effect as of the date hereof, and Maker shall remain liable for any deficiency resulting from a sale of the Collateral and shall pay any such deficiency forthwith on demand (Lender will give Maker reasonable notice of the time and place of any public sale of the Collateral, or of the time after which any private sale or any other intended disposition thereof is to be made). The requirements of reasonable notice will be met if such notice is mailed, postage prepaid, to the Maker's notice address no less than 10 days before the time of sale or disposition. It is agreed that a sale to a vendor is a commercially reasonable method of disposition (but shall not be deemed the only commercially reasonable method of disposition) and that Lender and/or its representative may purchase all or part of the Collateral at a public or private sale; (F) at the option of Lender, increase the interest rate on the outstanding indebtedness evidenced by this Note to 15.9% per annum, but not in excess of the highest rate allowable by law, until such time as Lender receives payment in full; (G) Lender shall have the express right (without prior demand or notice and without hereby waiving or prejudicing any other rights, powers or remedies under this Agreement) to enter any premises under the control of Maker or any Guarantor, without any obligation to pay rent to Maker or any Guarantor, by Lender's own means through self-help and without judicial process, breaking locks where necessary but without breaching the peace, or with legal process, in which case Maker agrees not to resist or interfere, and: (i) render the Collateral unusable without permanently diminishing the Collateral's value; and/or (ii) take possession of the Collateral for the purpose of disposition in a commercially reasonable manner, protection, and/or removal; and/or (H) The right to take such other and further action as Lender may at law or in equity be entitled to take.

**(9) Costs and Expenses**. Maker shall pay (or at Lender's option, reimburse Lender for) all recording and filing fees and other costs and expenses incurred in connection with the transactions contemplated by this Agreement. Maker further agrees to pay Lender a **$425.00** document preparation fee prior to Lender funding this Note and a **$195.00** disposition charge at loan termination as reimbursement for all Lender's expenses associated with the release and transfer of liens and title with respect to the Collateral.

**(10) Maximum Rate**. The maximum interest and fees and charges in the nature of interest or finance charges shall not exceed those permitted by applicable law (the "Legal Limits") and any provision which would, on its face, require such payments in excess of the Legal Limits is hereby amended to require payments of only such amounts permitted by the Legal Limits. In the event of any payment in excess of the Legal Limits, such excess payment shall be automatically credited to principal as a permitted partial prepayment, applied to the installments in the inverse order of their maturities, without any prepayment fee being due with respect thereto.

**(11) Governing Law, Waiver of Jury Trial, Service of Process, Counterclaims, Jurisdiction, Venue**. This Note, the following irrevocable Guaranty, and any and all present or future obligations or agreements directly or indirectly related thereto shall be governed and construed in accordance with the laws of the State of New York. In any litigation with Lender, whether or not arising out of or relating to this Note: (A) all parties to this Note and the following irrevocable Guaranty expressly waive trial by jury and agree that proper service of process can be effected by sending the required documents to the intended recipient at the recipient's last notice address as known by the sender via the United States Postal Service, by both certified mail, return receipt requested and by first class mail; (B) Maker and all Guarantors expressly waive the right to interpose any defense based on extension, partial payment, any statute of limitations, any claim of laches, and any set-off, counterclaim or cross-claim of any nature or description (including but not limited to war, act of God, governmental regulation, strike, loss, damage, destruction, obsolescence, inability of Debtor to use the Collateral or any part thereof for any reason), other than actual payments made by Maker pursuant to this Note (notwithstanding the aforementioned, to the extent that failure to interpose a set-off, counterclaim or cross-claim in an action brought by Lender would forever bar Maker or Guarantor from pursuing such set-off, counterclaim or cross-claim against Lender in a separate action, such set-off, counterclaim or cross-claim may be interposed in any action brought by Lender); (C) Maker and all Guarantors irrevocably submit to the jurisdiction of the courts of the State of New York and of the United States having jurisdiction in any of the following counties within the State of New York: New York, Queens, Kings, Bronx, Nassau and/or Suffolk, regardless of the venue and jurisdiction provisions of such other obligations and agreements, and agree not to raise and waive any objection to or defense based upon the jurisdiction or venue of any such court, or based upon forum non conveniens. Maker and all Guarantors agree not to bring any action or other proceeding with respect to this Note or with respect to any of its obligations hereunder in any court other than the aforementioned courts unless such courts of the State of New York and of the United States determine that they do not have jurisdiction in the matter. Notwithstanding the aforementioned, litigation regarding possession of the Collateral may be brought in any applicable jurisdiction.

**(12) No Waiver**. The Lender shall not by any act of delay, commission, failure to act or otherwise be deemed to have waived any right, power, privilege or remedy hereunder, and no waiver whatever shall be valid unless in writing signed by Lender, and then only to the extent therein set forth, nor shall any single or partial exercise of any right, power, privilege or remedy hereunder preclude any further exercise thereof, or the exercise of any other right, power, privilege or remedy. A waiver by Lender of any right or remedy under the terms of this Note or the following irrevocable Guaranty on any one occasion shall not be construed as a bar to any right or remedy which Lender would otherwise have had on any future occasion. No executory agreement, unless in writing and signed by Lender, and no course of dealing between Maker and/or Guarantors and Lender shall be effective to change or modify or discharge in whole or in part this Note unless in writing and signed by Lender. No notice to or demand on Maker or any Guarantor in any case shall entitle Maker or any Guarantor to any other or further notice or demand in the same, similar other circumstances.

**(13) Residual Value**. As regards any Loan Schedule that references this Note, the total amount of the column captioned "Residual Value" must be paid to Lender on the: (a) on the 7th day following the last required weekly payment for those Loan Schedules requiring weekly payments; (b) the 14th day following the last required bi-weekly payment for those Loan Schedules requiring bi-weekly payments; (c) the 15th day following the last required semi-monthly payment for those Loan Schedules requiring semi-monthly payments; and, (d) the 30th day following the last required monthly payment for those Loan Schedules requiring monthly payments.

**(14) Miscellaneous**. (A) All parties to this Note and the following irrevocable Guaranty: (i) expressly waive, to the extent permitted by law: presentment for payment; notice of dishonor; protest; notice of protest of this Note or the following irrevocable Guaranty; other notice of any kind and all demands whatsoever; (ii) agree not to make any claim against one another for any consequential damages; and, (iii) agree that all terms and

provisions of this Note and the following Irrevocable Guaranty: (a) shall be binding upon and shall inure to the benefit of, and be enforceable by the parties hereto, their respective legal representatives, permitted successors and permitted assigns; and, (b) are final expressions of the agreements between Maker and Guarantor(s) and Lender and may not be contradicted by evidence of any alleged oral agreement; (iv) represent and warrant that the other party, its agents, servants or employee have made no representation or statement whether oral or in writing, relating to or concerning this Note other than specifically set forth herein; (v) agree that this Note and the following Irrevocable Guaranty may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument; (B) Any provision of this Note or the Irrevocable Guaranty below that may be prohibited by applicable law be void and deemed deleted therefrom without invalidating any other provision thereof; (C) Lender will respond to Maker's reasonable requests for a Note payoff amount as of the specific date requested by Maker, but: (i) additional per diem interest will be due to Lender if the payoff amount is received by Lender after such specific date; and, (ii) if the payoff amount is received by Lender before such specific date, the incremental interest will be retained by Lender as an administrative fee; (D) In the event that any word, sentence, paragraph or article of this Note or the following Irrevocable Guaranty is found to be void or voidable, the balance of the Note shall nevertheless be legal and binding with the same force and effect as though the void or voidable parts were deleted; (E) Time is of the essence in respect to each provision of this Note and the Irrevocable Guaranty below; (F) Words used in this Note and the following Irrevocable Guaranty: (i) as singular shall be construed to mean the plural where necessary; and, (ii) as plural shall be construed to mean the singular where necessary; (G) The necessary grammatical changes required to make the provisions of this Note and the following Irrevocable Guaranty apply to corporations, entities or persons, women or men, shall in all cases be assumed as though fully expressed; (H) The Section titles contained in this Agreement are and shall be without substantive meaning or content of any kind whatsoever and are not a part of the agreement between the parties hereto; (I) The Lender may negotiate, assign and transfer this Note and any other document executed in connection herewith; (J) Maker may not transfer or assign this Note; (K) Maker hereby authorizes any of his/her/its employees to act on Maker's behalf to accept any Collateral and acknowledge receipt of same and Maker agrees that such acceptance shall be conclusive proof, as between Maker and Lender, that: (i) any defects in the Collateral shall not reduce or diminish Maker's obligations under this Note; (ii) Lender has fully and satisfactorily performed all covenants and conditions to be performed by Lender under the Note; and, (iii) Lender should pay the seller of the Collateral; (L) By signing this Note and/or the Irrevocable Guaranty below, the undersigned, who are either principals of Maker or a personal guarantor of its obligations, hereby provide written instruction to Lender or Lender's assignee authorizing review of his/her personal credit profile from a national credit bureau. Such authorization shall extend to obtaining a credit profile in connection herewith and subsequently for the purposes of update, renewal or extension of such credit or additional credit and for reviewing or collecting the resulting account; (M) To the extent that any communications and notices are required by this Note or the following Irrevocable Guaranty, if such communications and notices are in writing they shall be deemed to have been duly given if sent by United States mail, postage prepaid, to the parties at the address first above written, or at such other places or places as the party addressed may have designated by written notice to the other; and, (N) Notwithstanding the aforementioned, this Note and the following Irrevocable Guaranty may be executed: (i) in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument; and, (ii) by each party and forwarded to the intended recipient by email and/or facsimile transmission, and each such electronic copy shall be deemed to be an original and will be considered an electronic transaction under any and all electronic acts including the Uniform Electronic Transfer Act and/or the Electronic Signatures in Global and National Commerce Act.

**(15)** <u>No Warranty</u>.  The Collateral and/or the suppliers and/or manufacturers thereof have been selected by Maker based on Maker's own judgment. Maker requests Lender to either order the Collateral and/or arrange for its delivery to Maker and/or pay for it upon Maker's receipt thereof. Maker acknowledges that Lender did not and does not manufacture, deliver or install the Collateral nor does Lender represent the manufacturer or supplier thereof. LENDER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE MERCHANTABILITY AND PERFORMANCE OF THE COLLATERAL OR OF THE COLLATERAL'S FITNESS FOR A PARTICULAR PURPOSE OR ITS COMPLIANCE WITH APPLICABLE LAW. AS BETWEEN MAKER AND LENDER, MAKER FINANCES THE COLLATERAL ON AN "AS-IS" BASIS. Maker may have rights against the supplier(s) and/or manufacturer(s) of the Collateral and, as such, Maker should contact each supplier and/or manufacturer for a description of any such rights.

Maker: Sid's, Inc. DBA Sids Towing and Recovery, by _____

Jason Matthews, President

Lender: Eastern Funding LLC, by _____ Print Name and Title:  A PODRANG CM

**IRREVOCABLE GUARANTY:** Unless otherwise defined, words used herein shall have the same meaning as in the above Secured Promissory Note and Security Agreement (the "Note"). In consideration of Lender funding the Note, the undersigned hereby: (A) irrevocably, absolutely and unconditionally jointly and severally guarantee to Lender, irrespective of the genuineness, validity, regularity or enforceability thereof, the full and punctual payment and performance by Maker of all of Maker's existing and future liabilities to Lender when due, by acceleration or otherwise, whether arising by virtue of the Note or otherwise; (B) consent, without notice to the undersigned, to any and all extensions of time or terms of payment or modification of any of Maker's obligations to Lender; (C) agree that upon any default by Maker in the performance of any of Maker's obligations to Lender, Lender can proceed against one, some or all of the Guarantor(s) without first having to proceed against Maker; and, (D) hereby waive acceptance or notice of acceptance of this Irrevocable Guaranty. **The signatures of the undersigned hereto are intended as an acknowledgment that they have read, understand and agree with all of the terms and conditions of this Irrevocable Guaranty and of the Note, and that several provisions of the Note specifically apply to this Irrevocable Guaranty. The provisions hereof may not be changed orally, but only by a writing signed by Lender.** The undersigned Guarantor(s) represent and warrant to Lender that: (i) unless otherwise previously disclosed to Lender in writing, no one other than the undersigned Guarantor(s) has any equity interest in Maker; and, (ii) the actual percentage of each Guarantor's equity interest in Maker is detailed next to each respective Guarantor's signature.

Jason Matthews

Notice Address: 31247 N 1850 Road Rossville, IL  60963

50%
My Ownership
Percentage of Maker

Carol Matthews

Notice Address: 31247 N 1850 Road Rossville, IL  60963

50%
My Ownership
Percentage of Maker

Notice Address:

%
My Ownership
Percentage of Maker

%

## Loan Schedule 001

for the Master Promissory Note and Security Agreement dated 07/01/2014 and known as Loan # 71529 (the "Loan") wherein the Maker is Sid's, Inc. DBA Sids Towing and Recovery with its notice address at 628 E Fairchild Street, Danville, IL 61832, and the Lender is Eastern Funding LLC d/b/a Specialty Vehicle and Equipment Funding Group, a subsidiary of Brookline Bank

| | Year | Make | Model | Identification # or Serial # | Initial Payment | Net Amt. Financed | Monthly Payment* | Remaining Payments | Residual Value |
|---|---|---|---|---|---|---|---|---|---|
| Cab/Chassis: | 2015 | Ford | F550 | 1FDUF5GT1FEA17538 | | | | | |
| Add'l Equip. | 2014 | Vulcan | 19.5' Steel Carrier | 195CU05070000GD14 | | | | | |
| | | | | | $425.00 | $71,284.32 | $1,385.00 | 72 | $0.00 |

* All of Maker's monthly payments will be due on the same day of the month as was the delivery date. For example, if the vehicle is delivered on the 16th day of the month, Maker's next monthly payment would be due on the 16th day of the month following the month the vehicle was delivered to Maker. However: (a) if a payment day falls on a Bank holiday or weekend, Maker's next payment will be due on the following business day; (b) if the vehicle is delivered on the 31st day of a month, Maker's next monthly payment would be due on the last day of the month following the month the vehicle was delivered to Maker; (c) if the vehicle is delivered on the 29th or 30th day of a month, the February payments would be due on February 28th during leap years and on February 29th during all years other than leap years.

Lender will respond to Maker's reasonable requests for a Note payoff amount as of the specific date requested by Maker, but: (i) additional per diem interest will be due to Lender if the payoff amount is received by Lender after such specific date; and, (ii) if the payoff amount is received by Lender before such specific date, the incremental interest will be retained by Lender as an administrative fee.

Electronic copies of this executed document will have the same force and effect as original executed copies, but Maker and Lender agree that the version of this document with Lender's original signature shall constitute the original authoritative version.

Capitalized terms used herein shall have the same meaning as is detailed in the Loan.

GARAGING ADDRESS (if different from Maker's notice address):  _____

Effective this ____ day of ____ , 201__, this Loan Schedule is made a part of the above-referenced Master Promissory Note and Security Agreement.

Maker, by _____                    Lender, by _____
         Jason Matthews, President

                                                      Print Name and Title: A BRANG CM

EXHIBIT
4

## STATE OF ILLINOIS

# CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO.<br>1FDUF5GT1FEA17538 | YEAR<br>2015 | MAKE<br>FORD | MODEL<br>F550 SUPER DUTY | BODY STYLE<br>TRUCK | TITLE NO.<br>14230685083 |
|---|---|---|---|---|---|

1FDUF5GT1FEA17538

| DATE ISSUED<br>08/18/14 | ODOMETER | CCM | MOBILE HOME SQ. FT. | PURCHASED<br>06/30/14<br>NEW | TYPE TITLE<br>ORIGINAL |
|---|---|---|---|---|---|

MAILING ADDRESS

LEGEND(S)

MILEAGE NOT REQUIRED

EASTERN FUNDING LLC
538 BROADHOLLOW RD
MELVILLE NY 11747-3676

OWNER(S) NAME AND ADDRESS
SIDS INC DBA SIDS TOWING & RECOVERY
628 E FAIRCHILD ST
DANVILLE IL 61832

FIRST LIENHOLDER NAME AND ADDRESS
EASTERN FUNDING LLC
538 BROADHOLLOW RD
MELVILLE NY 11747-3676

SECOND LIENHOLDER NAME AND ADDRESS

RELEASE OF LIEN
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

Firm Name _____ By _____ Date _____
Signature of Authorized Agent

Firm Name _____ By _____ Date _____
Signature of Authorized Agent

NEW LIEN ASSIGNMENT: The information below must be on an application for title and presented to the Secretary of State.
Secured Party: _____ Address: _____

Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

## ASSIGNMENT OF TITLE
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
WARNING-ODOMETER DISCREPANCY.

"If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair-market value unless this document is accompanied by a salvage application."

NO
TENTHS

ODOMETER READING _____
Signature(s) of Seller(s) _____

Printed Name(s) of Seller(s) _____
I am aware of the above odometer certification made by seller.

DATE OF SALE _____

Signature(s) of Buyer(s) _____     Printed Name _____

I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the
records on file with my Office, the person or entity named hereon is the owner of the vehicle
described hereon, which is subject to the above named liens and encumbrances, if any
IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF
THE STATE OF ILLINOIS AT SPRINGFIELD

CONTROL NO.

M0727610

*Jesse White*

JESSE WHITE, Secretary of State

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

EXHIBIT
5

Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

## FIRST REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser _____ Street _____ City _____ State _____ Zip _____

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

▶ NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING _____

Date of Sale _____   Dealer No. _____

Dealer's Name _____

Agent's Signature _____   Printed Name (same as signature) _____

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent _____   Printed Name (same as signature) _____

## SECOND REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser _____ Street _____ City _____ State _____ Zip _____

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

▶ NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING _____

Date of Sale _____   Dealer No. _____

Dealer's Name _____

Agent's Signature _____   Printed Name (same as signature) _____

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent _____   Printed Name (same as signature) _____

## THIRD REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser _____ Street _____ City _____ State _____ Zip _____

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

▶ NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING _____

Date of Sale _____   Dealer No. _____

Dealer's Name _____

Agent's Signature _____   Printed Name (same as signature) _____

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent _____   Printed Name (same as signature) _____

## FOURTH REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser _____ Street _____ City _____ State _____ Zip _____

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

▶ NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING _____

Date of Sale _____   Dealer No. _____

Dealer's Name _____

Agent's Signature _____   Printed Name (same as signature) _____

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent _____   Printed Name (same as signature) _____

## LAST REASSIGNMENT DEALER ONLY

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser _____ Street _____ City _____ State _____ Zip _____

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

▶ NO TENTHS

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

ODOMETER READING _____

Date of Sale _____   Dealer No. _____

Dealer's Name _____

Agent's Signature _____   Printed Name (same as signature) _____

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent _____   Printed Name (same as signature) _____

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

VSO 40.24

Loan Schedule 002

for the Master Promissory Note and Security Agreement dated 03/19/2015 and known as Loan # 71529 (the "Loan") wherein the Maker is Sid's, Inc. DBA Sid's Towing and Recovery with its notice address at 628 E Fairchild St, Danville, IL 61832, and the Lender is Eastern Funding LLC d/b/a Specialty Vehicle and Equipment Funding Group, a subsidiary of Brookline Bank

|  | Year | Make | Model | Identification # or Serial # | Initial Payment | Net Amt Financed | Monthly Payment* | Remaining Payments | Residual Value |
|---|---|---|---|---|---|---|---|---|---|
| Cab/Chassis | 2015 | Freightliner | M-2 | 1FVACWDT3FHGJ4450 |  |  |  |  |  |
| Add'l Equip. | 2014 | Century | 21' Steel Carrier | 215L12S082236GK14 | $14,190.00 | $80,861.27 | $1,541.00 | 72 | $0.00 |

* All of Maker's monthly payments will be due on the same day of the month as was the delivery date. For example, if the vehicle is delivered on the 16th day of the month, Maker's next monthly payment would be due on the 16th day of the month following the month the vehicle was delivered to Maker. However: (a) if a payment day falls on a Bank holiday or weekend, Maker's next payment will be due on the following business day; (b) if the vehicle is delivered on the 31st day of a month, Maker's next monthly payment would be due on the last day of the month following the month the vehicle was delivered to Maker; (c) if the vehicle is delivered on the 29th or 30th day of a month, the February payments would be due on February 29th during leap years and on February 28th during all years other than leap years

Lender will respond to Maker's reasonable requests for a Note payoff amount as of the specific date requested by Maker, but: (i) additional per diem interest will be due to Lender if the payoff amount is received by Lender after such specific date; and, (ii) if the payoff amount is received by Lender before such specific date, the incremental interest will be retained by Lender as an administrative fee.

Electronic copies of this executed document will have the same force and effect as original executed copies, but Maker and Lender agree that the version of this document with Lender's original signature shall constitute the original authoritative version.

Capitalized terms used herein shall have the same meaning as is detailed in the Loan.

GARAGING ADDRESS (if different from Maker's notice address): _____

Effective _____, this Loan Schedule is made a part of the above-referenced Master Promissory Note and Security Agreement.

Maker, by _____
Jason Matthews, President

Lender, by _____
Print Name and Title: _____

EXHIBIT
6

**STATE OF ILLINOIS**

## CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO.<br>1FVACWDT3FHGJ4450 | YEAR<br>2015 | MAKE<br>FREIGHTLINER | MODEL<br>M2 106 MEDIUM DU | BODY STYLE<br>TRUCK | TITLE NO.<br>15113682129 |
|---|---|---|---|---|---|

1FVACWDT3FHGJ4450

| DATE ISSUED<br>04/23/15 | ODOMETER | CCM | MOBILE HOME SQ. FT. | PURCHASED<br>03/25/15<br>NEW | TYPE TITLE<br>ORIGINAL |
|---|---|---|---|---|---|

MAILING ADDRESS

LEGEND(S)

EASTERN FUNDING LLC
538 BROADHOLLOW RD
MELVILLE NY 11747-3676

MILEAGE NOT REQUIRED

OWNER(S) NAME AND ADDRESS
SIDS, INC DBA SIDS TOWING & RECOVER
114 N N ST
DANVILLE IL 61832

FIRST LIENHOLDER NAME AND ADDRESS
EASTERN FUNDING LLC
538 BROADHOLLOW RD
MELVILLE NY 11747-3676

SECOND LIENHOLDER NAME AND ADDRESS

RELEASE OF LIEN
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

_____     By _____     Date _____
Firm Name                       Signature of Authorized Agent

_____     By _____     Date _____
Firm Name                       Signature of Authorized Agent

NEW LIEN ASSIGNMENT: The information below must be on an application for title and presented to the Secretary of State.
Secured Party:                                    Address:

▶ Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment

### ASSIGNMENT OF TITLE
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
WARNING-ODOMETER DISCREPANCY.

"If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair-market value unless this document is accompanied by a salvage application."

| NO<br>TENTHS |
ODOMETER READING
Signature(s) of Seller(s) _____

Printed Name(s) of Seller(s) _____     DATE OF SALE _____
I am aware of the above odometer certification made by seller.
Signature(s) of Buyer(s) _____     Printed Name _____

I, Jesse White, Secretary of State of the State of Illinois, do hereby certify that according to the records on file with my Office, the person or entity named hereon is the owner of the vehicle described hereon, which is subject to the above named liens and encumbrances, if any.
IN WITNESS WHEREOF, I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS AT SPRINGFIELD

CONTROL NO.

M2629017

*Jesse White*

JESSE WHITE, Secretary of State

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

EXHIBIT
7

DocuSign Envelope ID: 139C0243-4C7D-4280-AE6F-45E5D22B6F3B

THIS IS A COPY

This is a copy view of the Authoritative Copy held
by the designated custodian

**Loan Schedule 003**

for the Master Promissory Note and Security Agreement dated 03/19/2015 and known as Loan # 71529 (the "Loan") wherein
the Maker is Sid's, Inc. DBA Sid's Towing and Recovery with its notice address at 114 N North St, Danville, IL 61832,
and the Lender is Eastern Funding LLC d/b/a Specialty Vehicle and Equipment Funding Group, a subsidiary of Brookline Bank

| | Year | Make | Model | Identification #or Serial # or Description | Initial Payment | Net Amt. Financed | Monthly Payment* | Remaining Payments | Residual Value |
|---|---|---|---|---|---|---|---|---|---|
| Cab/Chassis: | 2012 | International | 4300 Ext Cab | 1HTMKAZN6CH044206 | | | | | |
| Add'l Equip. | 2012 | Vulcan | V30 16 Ton Wrecker | 3014-0425-312 | | | | | |
| Equipment: | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | $21,700.00 | $102,944.00 | $2,666.00 | 60 | $0.00 |

* All of Maker's monthly payments will be due on the same day of the month as was the delivery date. For example, if the vehicle and/or the Equipment is delivered on the 16th day of the month, Maker's next monthly payment would be due on the 16th day of the month following the month the vehicle and/or the Equipment was delivered to Maker. However: (a) if a payment day falls on a Bank holiday or weekend, Maker's next payment will be due on the following business day; (b) if the vehicle and/or the Equipment is delivered on the 31st day of a month, Maker's next monthly payment would be due on the last day of the month following the month the vehicle and/or the Equipment was delivered to Maker; (c) if the vehicle and/or the Equipment is delivered on the 29th or 30th day of a month, the February payments would be due on February 29th during leap years and on February 28th during all years other than leap years.

Lender will respond to Maker's reasonable requests for a Note payoff amount as of the specific date requested by Maker, but: (i) additional per diem interest will be due to Lender if the payoff amount is received by Lender after such specific date, and (ii) if the payoff amount is received by Lender before such specific date, the incremental interest will be retained by Lender as an administrative fee.

Electronic copies of this executed document will have the same force and effect as original executed copies, but Maker and Lender agree that the version of this document with Lender's original signature shall constitute the original authoritative version.

Capitalized terms used herein shall have the same meaning as is detailed in the Loan.

**GARAGING ADDRESS or EQUIPMENT LOCATION (if different from Maker's notice address):** _____

Effective   October 13 , 2015   , this Loan Schedule is made a part of the above-referenced Master Promissory Note and Security Agreement.

Maker, by   [DocuSigned by: Jason Matthews]   Lender, by   [DocuSigned by: Tania Gonzalez]

Jason Matthews, President   Print Name and Title:   Tania Gonzalez   VP

09/02/2015

EXHIBIT
8

## STATE OF ILLINOIS

### CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO. |
|---|---|---|---|---|---|
| 1HTMKAZN6CH044206 | 2012 | INTERNATIONAL | 4000 SERIES 4400 | TRUCK | 15343870017 |

1HTMKAZN6CH044206

| DATE ISSUED | ODOMETER | CCM | MOBILE HOME SQ. FT. | PURCHASED | TYPE TITLE |
|---|---|---|---|---|---|
| 12/09/15 | | | | 10/14/15 USED | ORIGINAL |

MAILING ADDRESS

LEGEND(S)

EASTERN FUNDING LLC
538 BROADHOLLOW RD STE 221
MELVILLE NY 11747-3668

MILEAGE NOT REQUIRED

OWNER(S) NAME AND ADDRESS
SIDS TOWING AND RECOVERY
114 N N ST
DANVILLE IL 61832

FIRST LIENHOLDER NAME AND ADDRESS
EASTERN FUNDING LLC
538 BROADHOLLOW RD STE 221
MELVILLE NY 11747-3668

SECOND LIENHOLDER NAME AND ADDRESS

RELEASE OF LIEN
The Lienholder on the vehicle described in this Certificate does hereby state that the lien is released and discharged.

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

Firm Name _____ By _____ Signature of Authorized Agent _____ Date _____

NEW LIEN ASSIGNMENT: The information below must be on an application for title and presented to the Secretary of State.
Secured Party: _____ Address: _____

▶ Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

### ASSIGNMENT OF TITLE
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage.
**WARNING-ODOMETER DISCREPANCY.**

"If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair-market value unless this document is accompanied by a salvage application."

▶ ODOMETER READING [NO TENTHS]
Signature(s) of Seller(s) _____

Printed Name(s) of Seller(s) _____
I am aware of the above odometer certification made by seller.

DATE OF SALE _____

Printed by authority of the State of Illinois VSD 42.24

Completion of this form does not satisfy the transfer of ownership requirements as set forth in the Illinois Compiled Statutes. Illinois law requires the owner of a vehicle to complete and sign the Assignment of Title section on the Certificate of Title to the buyer who must apply to the Vehicle Services Department for a Certificate of Title.

If ... a vehicle that is titled in the State of Illinois, this form must be completed immediately the Illinois Secretary of State, Vehicle Services Department, Record Inquiry Division, 501 S. Second St., Rm. 408, Springfield, insure that your responsibility for the vehicle is released.

**EXHIBIT**

9

Federal and State law requires that you state the mileage in connect... failure to complete or providing a false statement may result in fines and/or imprisonment.

**FIRST REASSIGNMENT DEALER ONLY**

The transfer of ownership...

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser _____ Street _____ City _____ State _____ Zip _____

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING [ NO TENTHS ]
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale _____ Dealer's Name _____ Dealer No. _____

Agent's Signature _____ Printed Name (same as signature) _____

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent _____ Printed Name (same as signature) _____

**SECOND REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser _____ Street _____ City _____ State _____ Zip _____

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING [ NO TENTHS ]
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale _____ Dealer's Name _____ Dealer No. _____

Agent's Signature _____ Printed Name (same as signature) _____

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent _____ Printed Name (same as signature) _____

**THIRD REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser _____ Street _____ City _____ State _____ Zip _____

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING [ NO TENTHS ]
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale _____ Dealer's Name _____ Dealer No. _____

Agent's Signature _____ Printed Name (same as signature) _____

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent _____ Printed Name (same as signature) _____

**FOURTH REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser _____ Street _____ City _____ State _____ Zip _____

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING [ NO TENTHS ]
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale _____ Dealer's Name _____ Dealer No. _____

Agent's Signature _____ Printed Name (same as signature) _____

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent _____ Printed Name (same as signature) _____

**LAST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted, and has been transferred to the following printed name and address:

Name of Purchaser _____ Street _____ City _____ State _____ Zip _____

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

ODOMETER READING [ NO TENTHS ]
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale _____ Dealer's Name _____ Dealer No. _____

Agent's Signature _____ Printed Name (same as signature) _____

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent _____ Printed Name (same as signature) _____

VSD 40-24

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.